## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JONATHAN PENNINGTON AND
BROOKE PENNINGTON,

        Plaintiffs,

v.

KEVAN MEYERS, et al.,

        Defendants.

        Case No. 21-2591-DDC-JPO

## MEMORANDUM AND ORDER

Pro se plaintiffs Jonathan and Brooke Pennington[1] filed this lawsuit against 52 named defendants alleging, generally, violations of federal law based on their alleged interference with plaintiffs' right to abortion and a right to access abortion clinics. *See generally* Doc. 18 (Am. Compl.). On February 1, 2022, the court ordered plaintiffs to show cause why the court should not (1) dismiss this action under 28 U.S.C. § 1915, for failing to state a claim on which relief may be granted, and (2) why the court should not dismiss plaintiff Brooke Pennington from the case because Jonathan Pennington, as a non-licensed attorney, cannot litigate on her behalf. Doc. 52 at 8.

On February 15, 2022, plaintiffs timely filed a Response to the court's Show Cause Order. Doc. 58. The Response shows good cause why the court should not dismiss plaintiff Brooke Pennington from the case. So, the court won't dismiss her. Also, the Response provides

---

[1] Because plaintiffs proceed pro se, the court construes their filings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."). But, plaintiffs' pro se status does not excuse them from complying with the court's rules or facing the consequences of noncompliance. *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

much more factual detail about events that allegedly occurred on December 18, 2021, when plaintiffs visited a Planned Parenthood clinic to seek reproductive health services.  The court construes plaintiffs' Response as a supplement to the Amended Complaint (Doc. 18).  Also, it construes liberally the pro se allegations in the Amended Complaint and Response—as it must. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  As explained below, the court finds that plaintiffs' allegations—even under the most liberal construction—fail to state a plausible claim against most of the defendants.  But, the allegations—liberally construed and taken for now as true—plausibly state a claim against defendants Kevan Meyers,[2] Trey Jadlow, and Clifton Boje for violating the Freedom of Access to Clinic Entrances (FACE) Act under 18 U.S.C. § 248.  The court allows this one claim to proceed against those three defendants.  In contrast, the court dismisses all other claims and defendants under 28 U.S.C. § 1915.  The court explains how it reaches these conclusions, below.

I.      **Factual and Procedural Background**

Plaintiffs filed an Amended Complaint alleging "injury . . . from Defendant[s'] intentional, known, open, and continuous violation(s) of the Laws of the United States of America[.]"  Doc. 18 at 1.  The Amended Complaint asserts six causes of action against 52 defendants:  (1) "deprivation of civil liberties" violating 18 U.S.C. § 242, by interfering with the "right to abortion" and the "rights to access abortion clinics, the right to engage in abortion services, and freedom of unobstructed ingress and egress to and from clinics[;]" (2) RICO violations under 18 U.S.C. § 1962; (3) Freedom of Access to Clinic Entrances Act violations under 18 U.S.C. § 248; (4) stalking, a violation of 18 U.S.C. § 2261A; (5) hate crimes violating

---

[2]      Plaintiffs' filings spell Kevan Meyers's name both as "Meyers" and "Myers."  Plaintiffs' original Complaint and Amended Complaint caption their case against "Kevan Meyers & Co-Conspirators."  Doc. 1 at 1; Doc. 18 at 1.  So, the court uses the "Meyers" spelling throughout this Order.

18 U.S.C. § 249; and (6) domestic terrorism violating 18 U.S.C. § 2331(5). *Id.* at 1–2. Plaintiffs seek $100 million in compensatory damages, $1 million in punitive damages, treble damages, injunctive relief, attorney's fees, and "issuance of criminal referral[.]" *Id.* at 3–4.

The Amended Complaint itself contains only vague and conclusory allegations about the facts that allegedly support plaintiffs' six causes of action. Also, the caption of the lawsuit names both Jonathan and Brooke Pennington as plaintiffs. *Id.* at 1. But the first sentence of the Amended Complaint asserts that the action is brought by "Jonathan Todd Pennington, pro se class counsellor" and never names Brooke Pennington as a litigant. *Id.* Also, plaintiff Jonathan Pennington is the only plaintiff who has signed the Complaint. *Id.* at 6–7; Doc. 18-1 at 6–7.

On January 25, 2022, Magistrate Judge James P. O'Hara granted plaintiffs' Motion for Leave to Proceed In Forma Pauperis ("IFP") under 28 U.S.C. § 1915. Doc. 40. Under 28 U.S.C. § 1915(e)(2), the court must consider the merits of all cases where a plaintiff proceeds IFP, and must dismiss any action that "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). Consistent with the statute's mandate, the court reviewed plaintiffs' Complaint and concluded that it fails to state a claim on which the court may grant relief. Doc. 52 at 3–8. So, it ordered plaintiffs to show cause within 20 days of the date of the court's February 1 Order why the court should not dismiss this case under § 1915, for failing to a state claim. *Id.* at 8. Also, the court ordered plaintiffs to show cause why the court should not dismiss plaintiff Brooke Pennington from the case because Jonathan Pennington, as a non-licensed attorney, cannot litigate on her behalf.

Plaintiff filed a lengthy Response to the Show Cause Order. Doc. 58. The Response explains that both Jonathan and Brooke Pennington are litigating this case on their own behalf and that Jonathan is not trying to represent Brooke's interests in the lawsuit. *Id.* at 2–3. The

Response also recites that plaintiffs "regret not affixing a signature from Brooke to each document that was filed, for doing so would have openly communicated the mutual agreement that did, and does, exist with each document." *Id.*

Also, the Response provides many more factual details than the Amended Complaint recites. As already explained, the court liberally construes the Response as a request for leave to supplement the Amended Complaint with plaintiffs' additional factual allegations. The court grants that request and considers the Response's allegations as part of the Amended Complaint. *See Dudley v. N. Cent. Reg'l Off.*, No. 09-2027-JWL, 2009 WL 2914104, at *1 n.1 (D. Kan. Sept. 8, 2009) (considering plaintiffs' claims asserted in "the original complaint, the amended complaint, and the supplement" because the court "must construe a pro se litigant's pleadings 'liberally'" (quoting *Bellmon*, 935 F.2d at 1110)). Also, when deciding whether plaintiffs have stated a plausible claim for relief, the court accepts facts asserted by the Amended Complaint and Response as true and views them in the light most favorable to plaintiffs. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

According to the Response, on December 18, 2021, plaintiffs travelled together to a Planned Parenthood clinic in Overland Park, Kansas, "for the purpose of acquiring reproductive healthcare services, namely abortion services." Doc. 58 at 4. Jonathan Pennington drove Brooke to her appointment at the clinic, and he volunteered to watch their children in the car while she went inside to the appointment. *Id.* As they pulled into the clinic's driveway, a man holding a sign approached their car, causing plaintiffs to come to a stop. *Id.* Jonathan recognized the man as Trey Jadlow, a former acquaintance of both Jonathan and Brooke. *Id.* Mr. Jadlow shouted questions at plaintiffs in their car while he stood in "close and vexatious proximity to [the] vehicle." *Id.* Jonathan drove the car away from Mr. Jadlow to the opposite end of the parking

lot.  *Id.*  As Jonathan parked the car, plaintiffs heard Mr. Jadlow and another man, Kevan

Meyers, shouting at them using a microphone and amplifier.  *Id.* at 4–5.  The two men shouted

various things to plaintiffs, including "You are murderers[,]" "You're killing your child[,]" and

"You have blood on your hands[.]"  *Id.* at 4.

    With the two men still shouting, Brooke got out of the car and went inside to the clinic.

*Id.* at 5.  While she was inside the clinic, Mr. Meyers began calling Brooke's name through the

amplifier.  *Id.*  Mr. Meyers shouted:  "Brooke . . . If you do not repent, you will face the

judgments of God."  *Id.*  Mr. Meyers also began live streaming on Facebook.  *Id.* at 7.  Also,

Deana Marie—Mr. Meyers's partner at "Time to Win A Battle of Ministries"—made the

following statements on Facebook:  "Cease and desist the murder of the innocent!  Repent and

turn to Christ!" and "Abortion is murder, and against God's law which trumps man's [law]!

Repent of your rebellion, Jon."  *Id.*

    Plaintiffs allege that Kevan Meyers spoke the "most chilling words" when he said:  "The

blood is on your hands."  *Id.* at 7.  Plaintiffs assert that these are the same words uttered by Scott

Roeder when he shot and killed George Tiller in 2009.[3]  *Id.*  Given this history, plaintiffs allege

that they "take the words to be a clear and open threat to their very lives."  *Id.*  Also, plaintiffs

allege that they "heard or read" other "threats" directed at them, but they never identify the

person(s) who purportedly said these things.  *Id.* at 8–9.  These other statements include:  (1) "If

you do not repent, God will destroy you[,]" (2) "We will deliver the judgments of God upon

---

[3]     Though not part of plaintiffs' allegations, one news article reported that when a Sedgwick
County, Kansas District Judge sentenced Scott Roeder "to life in prison with no possibility of parole for
50 years for the murder of Wichita abortion provider George Tiller[,]" Mr. Roeder "yelled at prosecutors"
that "'The blood of babies is on your hands[.]'"  Ron Sylvester, *Scott Roeder Gets Hard 50 in Murder of
Abortion Provider George Tiller*, The Wichita Eagle, Oct. 24, 2014,
https://www.kansas.com/news/article1033388.html.

you[,]" (3) "Repent or else[,]" (4) "You should be ashamed of yourself[,]" (5) "It's murder, it's homicide—an attack[,]" and (6) "This day will be a day of infamy for you[.]" *Id.*

The shouting by Kevan Meyers caused Jonathan to remember sermons that he had heard given by certain individuals. *Id.* at 5. Plaintiffs have named these individuals as defendants but they don't allege these individuals participated in the events on December 18, 2021, much less that they even were present at the clinic on that day. *Id.* Also, plaintiffs allege in a conclusory fashion that Kevan Meyers and others have engaged in an "ongoing, open-ended, conspiracy to stop abortion rights" and that "these 52 named Co-Conspirators . . . work in such a manner year after year to seek to strip away constitutionally protected rights[.]" *Id.* at 5–6. And, plaintiffs make the conclusory assertion that defendants have acted "in a manner violative of the RICO Laws, and other known laws other the United States such as those that bar Hate Crimes, acts of Terror, and Stalking[.]" *Id.* at 6.

When Brooke finished her appointment at the clinic, she left the building where it was located and returned to the car. *Id.* at 10. Jonathan drove Brooke and the children out of the parking lot. *Id.* As they began "to make egress out of the parking lot and onto the road[,]" Clifton Boje "rushed up to interpose himself in an obstructing manner" between plaintiffs' car and the open exit. *Id.* But, plaintiffs were able "to drive on" and "made [their] way out and off of the property, and safely home." *Id.*

## II.    Legal Standard

As already stated, 28 U.S.C. § 1915 requires the court to consider the merits of all cases in which a plaintiff proceeds IFP, and must dismiss any action that "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). To determine whether a pro se plaintiff states a plausible claim, the "standard of review for dismissals under §

1915(e)(2)(B)(ii)" is the same as "Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  This standard requires that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim. *Id.*  The court "accept[s] the facts alleged in the complaint as true and view[s] them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

## III.   Analysis

As discussed, the court ordered plaintiffs to show cause why the court should not (1) dismiss this action under 28 U.S.C. § 1915, for failing to state a claim on which relief may be granted, and (2) why the court should not dismiss plaintiff Brooke Pennington from the case because Jonathan Pennington, as a non-licensed attorney, cannot litigate the case on her behalf. Doc. 52 at 8.  The court addresses those two questions below, but reverses their order.

### A.  The Court Won't Dismiss Brooke Pennington As A Plaintiff.

Plaintiffs have shown good cause why the court shouldn't dismiss Brooke Pennington as a plaintiff in the case.  Plaintiffs' Response to the Show Cause Order adequately explains that both Jonathan and Brooke are litigating this case on their own behalf.  Doc. 58 at 2–3.  It also recognizes that plaintiffs erred by not "affixing a signature from Brooke to each document" they have filed. *Id.*  The court won't dismiss Brooke from the lawsuit based on an oversight.  But it reminds the pro se plaintiffs that each of them must sign the documents they file with the court because, as non-licensed attorneys, they only can represent themselves pro se.  They cannot

"represent the rights or interests of others." *Hartnett v. Farm Serv. Agency*, No. 18-1045-EFM-GEB, 2018 WL 2971692, at *4 (D. Kan. June 12, 2018) (dismissing plaintiff's Complaint because he could not bring the action on behalf of another party).

### B. The Complaint States a Plausible FACE Act Claim Against Three Defendants But Fails to State Any Other Plausible Claims Against Any Other Defendants.

Next, the court evaluates whether plaintiffs have shown good cause why the court should not dismiss their Amended Complaint for failing to state a claim for relief. As discussed, the Amended Complaint asserts six claim for relief. The court addresses those six claims below.[4]

#### 1. Plaintiffs' First, Fourth, Fifth, and Sixth Claims

Plaintiffs' first, fourth, fifth, and sixth claims assert violations of various federal criminal statutes. These criminal statutes include 18 U.S.C. § 242 (first claim for "deprivation of civil liberties"[5]), 18 U.S.C. § 2261A (fourth claim for "stalking"), 18 U.S.C. § 249 (fifth claim for

---

[4]      Plaintiffs' Amended Complaint never asserts a defamation claim. *See generally* Doc. 18. Plaintiffs' Response to the Show Cause Order alleges—for the first time—that defendants "defamed the character" of plaintiffs. Doc. 58 at 10. To the extent plaintiffs are attempting to assert a defamation claim under Kansas law, their filings—even under the most liberal construction—fail to allege facts supporting a plausible finding or inference to support to a defamation claim. In Kansas, a defamation claim must allege that: "(1) [defendant] uttered or wrote false and defamatory words; (2) [defendant] communicated these statements to a third person; and (3) plaintiff's reputation was injured as a result." *Dominguez v. Davidson*, 974 P.2d 112, 117 (Kan. 1999). Here, most of the alleged defamatory words are "a statement of an opinion" which "must contain a provable false connotation before constituting actional defamation." *Carson v. Lynch*, No. 76,767, 1998 WL 36035596, at *2 (Kan. Ct. App. May 22, 1998) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20–21 (1990)). Even if statements urging plaintiffs to "repent" or face the "judgment of God" contain a provable false connotation, and thus, possibly qualify as false and defamatory words, plaintiffs fail to allege any facts (other than conclusory ones) capable of supporting a finding or inference that defendants' words injured their reputations. Thus, plaintiffs fail to state a defamation claim under Kansas law.

[5]      To the extent the court could construe plaintiffs' "deprivation of civil liberties" claim as asserting a claim for constitutional violations under 42 U.S.C. § 1983, the Complaint also fails to state a claim for relief under that statute. A plaintiff may assert a civil cause of action under § 1983 against a defendant who violates a constitutional right while "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs' Complaint never alleges any facts capable of supporting a reasonable finding or inference that any of the 52 defendants are "state actors," plausibly liable on a § 1983 claim.

"hate crimes"), and 18 U.S.C. § 2331(5) (sixth claim for "domestic terrorism").  As the court explained in its Show Cause Order, none of these federal criminal statutes provide plaintiffs the right to assert a private cause of action.  Doc. 52 at 4–6; *see also Tucker v. U.S. Ct. of Appeals for the Tenth Cir.*, 815 F. App'x 292, 294 (10th Cir. 2020) (explaining that 18 U.S.C. § 242 is a "criminal statute[ ] that do[es] not provide for private civil causes of action"); *Gressett v. New Orleans City*, 779 F. App'x 260, 261 n.1 (5th Cir. 2019) (finding plaintiff's 18 U.S.C. § 2261A claim "invalid" because "the statute does not create a civil cause of action"); *Perkins v. Univ. of Kan. Med. Ctr.*, No. 13-2530-JTM, 2014 WL 1356042, at *4 (D. Kan. Apr. 7, 2014) (dismissing civil claims asserted under 18 U.S.C. § 249 because it's a federal statute that "authorize[s] criminal prosecution for various acts," but does "not authorize a private right of action"); *Hayes v. Burns*, No. 3:13-cv-00028, 2013 WL 4501464, at *4 (M.D. Tenn. Aug. 22, 2013) (citing 18 U.S.C. § 2333 and explaining that federal law allows "a private cause of action for United States nationals injured by international terrorism, but provides no cause of action for victims of *domestic terrorism*" (emphasis added)).

Plaintiffs' Response to the Show Cause Order fails to address these four statutes or whether they permit plaintiffs to assert a private cause of action.  The Response, in a general or conclusory fashion, alleges that defendants "have acted in open conspiracy toward the end of Depriving Civil Liberties" and have violated "other known laws . . . such as those that bar Hate Crimes, acts of Terror, and Stalking[.]"  Doc. 58 at 6.  But, it never explains how plaintiffs have stated a plausible claim in their first, fourth, fifth, and sixth claims under these criminal statutes. To the contrary, none of these four statutes permit plaintiffs to bring a private cause of action. Thus, these four claims fail to state plausible claim for relief, and the court, as it is obligated to do, dismisses them.  *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (affirming

dismissal of claims alleging violations of federal criminal statutes because the statutes "do not

provide for a private right of action and are thus not enforceable through a civil action"); *see also*

*Tucker v. U.S. Ct. of Appeals for the Tenth Cir.*, 815 F. App'x 292, 294 (10th Cir. 2020)

(affirming dismissal of claims alleging violations of federal criminal statutes because "these

statutes do not afford [plaintiff] a private right of action").

For all these reasons, the court dismisses plaintiffs' first, fourth, fifth, and sixth claims

under 28 U.S.C. § 1915 because they "fail[ ] to state a claim on which relief may be granted[.]"

28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.  Plaintiffs' Second Claim for RICO Violations

Plaintiffs' second claim asserts RICO violations under 18 U.S.C. § 1962.  Subsection

1962(c) of RICO makes it:

> unlawful for any person employed by or associated with any enterprise engaged in,
> or the activities of which affect, interstate or foreign commerce, to conduct or
> participate, directly or indirectly, in the conduct of such enterprise's affairs through
> a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Although none of plaintiffs' filings reference § 1964(c), it is the statute that

provides a private civil cause of action for those who are injured by violations of § 1962.  It

allows recovery of treble damages, costs, and attorney's fees.  *Id.* § 1964(c).

To state a plausible RICO violation, plaintiffs must allege:  "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*,

473 U.S. 479, 496 (1985) (footnote omitted).  Also, a RICO plaintiff "only has standing if, and

can only recover to the extent that, he has been injured in his business or property by the conduct

constituting the violation."  *Id.*

Neither plaintiffs' Amended Complaint nor the Response to the Show Cause Order

provide factual allegations supporting a reasonable finding or inference of any of RICO's

required legal elements.  Instead, both filings merely allege violations of the "RICO Laws" in a

patently conclusory fashion.  Doc. 18 at 2, 3, 4; Doc. 58 at 6, 11.  Plaintiffs' conclusory

allegations fail to allege a viable RICO claim.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

state a plausible claim for relief).  Thus, the court dismisses plaintiffs' second claim for RICO

violations because it "fails to state a claim on which relief may be granted[.]"  28 U.S.C. §

1915(e)(2)(B)(ii).

### 3.  Plaintiffs' Third Claim for FACE Act Violations

Plaintiffs' third claim asserts violations of the FACE Act under 18 U.S.C. § 248.  This

statute allows private litigants to bring a civil cause of action against a defendant who by "force

or threat of force or physical obstruction, intentionally injures, intimidates or interferes with . . .

any person because that person is or has been . . . obtaining . . . reproductive health services."  18

U.S.C. § 248(a)(1) & (c)(1)(A).  The statute defines "intimidate" to mean "to place a person in

reasonable apprehension of bodily harm to him- or herself or to another."  *Id.* § 248(e)(3).  And,

it defines "interfere with" to mean "to restrict a person's freedom of movement."  *Id.* § 248(e)(2).

Although plaintiffs' Amended Complaint and Response allege that all 52 defendants

violated the FACE Act, the court finds, below, that plaintiffs' filings assert factual allegations

capable of supporting a FACE claim against just three of the defendants.[6]  The FACE Act does

---

[6]     Although plaintiffs make conclusory references to a "conspiracy," they haven't alleged facts
supporting a claim for civil conspiracy against all 52 defendants.  In Kansas, "the elements of a civil
conspiracy include:  (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the
minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the
proximate result thereof."  *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984) (citation and internal
quotation marks omitted).  Plaintiffs make conclusory assertions that all 52 defendants conspired to end
abortion rights.  *See* Doc. 18 at 2 (alleging "Kevan Meyers" violated the law "in connection and
conspiracy with a long list of 'Co-Conspirators', each person being respectively enumerated in filings on
the docket of this case filed in tandem with this complaint."); *see also* Doc. 58 at 5 (alleging "an ongoing,
open-ended, conspiracy to stop abortion rights spanning from at least the late 1980s into our current era").

not prohibit actions that "may intimidate[.]" *Allentown Women's Ctr., Inc. v. Sulpizio*, 403 F. Supp. 3d 461, 467 (E.D. Pa. 2019).  Instead, the statute only prohibits "actions [that] constitute [1] a use of force, [2] a threat of force[,] or [3] physical obstruction." *Id.* (citing 18 U.S.C § 248(a)(1) (further citation omitted)).  The court addresses and applies those three prohibited actions to these plaintiffs' allegations, below.

### a. Use of Force

The FACE Act doesn't define the term "force."  *See generally* 18 U.S.C. § 248.  When interpreting this statutory term, a New York federal court noted that "'[w]hen words in a statute are not otherwise defined, it is fundamental that they will be interpreted as taking their ordinary, contemporary, common meaning.'"  *N.Y. ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 473 (S.D.N.Y. 2006) (quoting *Morse v. Republican Party of Va.*, 517 U.S. 186, 254 (1996)).  The same court explained that "force is broadly defined as 'power, violence, or pressure directed against a person or thing.'"  *Id.* (quoting *Dickson v. Ashcroft*, 346 F.3d 44, 50 (2d Cir. 2003)).  Force "is not limited to 'violent or assaultive' force, and there is no exception for fleeting and *de minimis* contact[.]"  *Id.* (citations omitted).  The New York court also found that the defendant had engaged in a "use of force" violating the FACE Act when (1) he "came up to an escort volunteering at the Center, pressed his body into the escort, and pushed the escort when the escort told him to move away" and (2) he "pushed into an escort as she was opening the door for a patient."  *Id.* at 474.

---

But, they allege no facts supporting a plausible finding or inference that each of the 52 defendants had a "meeting of the minds" with their alleged co-conspirators by, for example, communicating with each other, entering an agreement, or otherwise engaging in a concerted action.  *See Kearns v. N.Y. Cmty. Bank*, No. 115,470, 2017 WL 1148418, at *8 (Kan. Ct. App. Mar. 24, 2017) (concluding plaintiff failed to allege civil conspiracy claim when he had "not alleged any facts that a conspiracy existed or that there was a meeting of the minds" but instead, "the allegations in the petition [were] conclusory and [did] little to support a conspiracy claim").  Without sufficient factual allegations to support a "meeting of the minds," plaintiffs fail to allege a plausible civil conspiracy claim under Kansas law.

Plaintiffs don't allege that any of the 52 defendants committed a use of force. And none of plaintiffs' filings allege that anyone touched or pushed them or otherwise used force against them. Thus, plaintiffs haven't stated a "use of force" claim under the FACE Act.

**b. Threat of Force**

The FACE Act also doesn't define the term "threat of force." *See generally* 18 U.S.C. § 248; *see also United States v. Dillard*, 795 F.3d 1191, 1198 (10th Cir. 2015). Our Circuit has instructed that "FACE must be interpreted consistently with the First Amendment," and so, it agrees "with the Ninth Circuit . . . that this term should be interpreted consistently with well-settled law defining 'true threats' which fall outside of the First Amendment's protections." *Id.* at 1198–99 (citing *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002) (en banc)).

The Supreme Court has defined "true threats" as "'statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *Id.* at 1199 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). "To fall outside of the First Amendment's protections, a threat must according to its language and context convey a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic, unpleasantly sharp attacks on government and public officials." *Id.* (quotation cleaned up). A "true threat must include 'a serious expression of an intent to commit an act of unlawful violence,'" but "the speaker need not intend to actually act upon the threat" to make the threat actionable. *Id.* (quoting *Black*, 538 U.S. at 359).

Our Circuit applies "an objective test to determine whether the speaker made a true threat, 'focusing on whether a reasonable person would find that a threat existed.'" *Id.* (quoting

*United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001)).  "This objective test requires 'a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant.'"  *Id.* (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1167–68 (10th Cir. 2009)).

Because the objective test "involves a fact-intensive inquiry," our Circuit "consistently [has] held that 'whether a defendant's statement is a true threat or mere political speech is a question for the jury.'"  *Id.* (quoting *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999)).  But, "'[i]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law.'"  *Id.* (quoting *Viefhaus*, 168 F.3d at 397).  "'But, absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury.'"  *Id.* (quoting *United States v. Wheeler*, 776 F.3d 736, 742 (10th Cir. 2015)).

Here, plaintiffs' filings allege a number of "threats" that, they assert, support their FACE Act claims.  But, many of the statements don't "'communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'"  *Id.* at 1199 (quoting *Black*, 538 U.S. at 359).  For example, the alleged statements telling plaintiffs that they should "repent" or that they "should be ashamed of [themselves]" or that abortion is "murder" don't communicate any threats.  No reasonable fact finder could conclude that these statements "include 'a serious expression of an intent to commit an act of unlawful violence'" against plaintiffs.  *Id.* (quoting *Black*, 538 U.S. at 359).  As a Pennsylvania court explained, the FACE Act doesn't prohibit actions that "may intimidate[.]"  *Allentown Women's Ctr., Inc.*, 403 F. Supp. 3d at 467.  Instead, it prohibits actions that constitute "a threat of force[.]"  *Id.* (citing 18

U.S.C § 248(a)(1)).  And, most of the alleged statements made to plaintiffs don't constitute "a threat of force."

However, the court finds that a reasonable trier of fact could conclude that four of the alleged statements constitute an actionable "threat of force" under the FACE Act.

*First,* plaintiffs allege that Kevan Meyers said:  "The blood is on your hands."  Doc. 58 at 7.  Plaintiffs assert that these are the same words uttered by Scott Roeder when he shot and killed George Tiller.  *Id.*  Because of that context, plaintiffs allege, they "take the words to be a clear and open threat to their very lives."  *Id.*  As already explained, the "test to determine whether the speaker made a true threat" is an "objective" one that focuses "on whether a reasonable person would find that a threat existed."  *Dillard*, 795 F.3d at 1199 (citations and internal quotation marks omitted).  So, plaintiffs' subjective understanding of this phrase doesn't carry the day whether the statement could constitute a "threat of force."  Instead, our Circuit has emphasized that the objective test also "involves a fact-intensive inquiry," and "the question whether statements amount to true threats is a question *generally best left to a jury*."  *Id.* (emphasis added) (citations and internal quotation marks omitted).

The phrase "blood on one's hands" is "used to say that someone is responsible for someone else's death."  *Blood on one's hands*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/blood%20on%20one's%20hands (last visited Mar. 2, 2022).  So, under that definition, the phrase "blood on your hands" doesn't threaten application of force.  Instead, the phrase makes an accusation against a person.  But, the court also recognizes that not all people will know the dictionary definition of the phrase.  And, Scott Roeder—who was convicted of murder for killing an abortion provider—has used that phrase, as plaintiffs allege, in the context of committing violence.  As our Circuit has instructed, when

"determining whether a communication conveys a true threat, 'context is critical . . . and history can give meaning to the [message].'"  *Id.* at 1201 (quoting *Planned Parenthood*, 290 F.3d at 1078).  At this stage, the court knows relatively little about the overall context of the statement.  Depending on the context, a reasonable person might find that talking about "blood" on another person's body could suggest that the speaker intends to commit violence.

At this earliest stage, the court is unwilling to conclude that the facts alleged about Mr. Meyers's "blood on your hands" statement fail to assert a plausible "threat of force" claim.  Instead, depending on facts defining the larger context of the statement, the court concludes that a reasonable factfinder could find this phrase satisfied the governing legal standard.  *See Dillard*, 795 F.3d at 1200–01 (recognizing that a "jury may be more likely to find a true threat where a communication unequivocally and directly expresses the speaker's intent to personally commit an act of violence against the recipient, but it can still reasonably find a true threat even where the communication is more ambiguous").  And, in contrast, such a factfinder might reach the opposite conclusion—finding that this phrase doesn't amount to a threat of force because its dictionary definition isn't a threat, but instead, an accusation against a person.  Because our Circuit has instructed that "the question whether statements amount to true threats is a question generally best left to a jury[,]" *Dillard*, 795 F.3d at 1199, the court leaves this question to the summary judgment process or, depending on the summary judgment facts, the jury.  In sum, the court concludes on these facts that plaintiffs have alleged a plausible claim under the FACE Act against Mr. Meyers for making a "threat of force" that "intimate[d]" plaintiffs because they were "obtaining . . . reproductive health services."  18 U.S.C. § 248(a)(1).

*Second*, plaintiffs allege that they "heard or read" several "threats" directed at them.  Doc. 58 at 8.  These threats include the phrase "*We* will deliver the judgments of God upon

you[.]" *Id.* at 9 (emphasis added).  A reasonable fact finder could conclude that the use of the first person—"we"—and the threat to "deliver the judgments of God" upon plaintiffs constitutes a "threat of force."  A jury reasonably could find that this phrase included "'a serious expression of an intent to commit an act of unlawful violence[.]'"  *Dillard*, 795 F.3d at 1199 (quoting *Black*, 538 U.S. at 359).

*Third*, plaintiffs allege they heard the phrase "Repent *or else*[.]"  Doc. 58 at 9 (emphasis added).  Although plaintiffs don't allege the meaning of "or else," our Circuit has recognized that a jury "can still reasonably find a true threat even where the communication is more ambiguous."  *Dillard*, 795 F.3d at 1201.  And, because "the question whether statements amount to true threats is a question generally best left to a jury[,]" *id.* at 1199, the court concludes that a jury should decide whether the phrase "Repent or else" constitutes a "threat of force."

*Fourth*, plaintiffs allege they heard the phrase:  "This day will be a day of infamy for you[.]"  *Id.* at 9.  Infamy means "evil reputation brought about by something grossly criminal, shocking, or brutal" or "an extreme and publicly known criminal or evil act."  *Infamy*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/infamy (last visited Mar. 2, 2022).  Based on the facts alleged, it's not clear what the statement means.  A reasonable trier of fact could conclude that the "infamy" the speaker referenced was plaintiffs' actions seeking reproductive health services.  On the other hand, a reasonable factfinder might conclude that the word "infamy" was meant as threat that someone would commit "an extreme and publicly known criminal or evil act" against plaintiffs.  Again, because our Circuit has instructed that the question whether a statement constitutes a threat of force is a jury question, the court must let a jury decide whether this statement is an actionable threat of force under the FACE Act.

A final issue inheres in plaintiffs' allegations about the second, third, and fourth statements.  As already discussed, plaintiffs never identify the speaker or author of the alleged threats.  Instead, they allege only that they "heard or read" the alleged threats.  Our Circuit has explained that a complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against" defendants.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n.10).  Here, plaintiffs' filings don't specify which one (or ones) of the 52 defendants said or wrote these statements.  But liberally construing plaintiffs' allegations and viewing them in the light most favorable to plaintiffs, the court reasonably can attribute these statements to defendants Kevan Meyers and Trey Jadlow.  Plaintiffs allege that Mr. Meyers and Mr. Jadlow shouted repeatedly at them and even used an "amplifier system" and "loud speaker" to speak to plaintiffs both while they were in the parking lot and while Brooke was in the clinic for her appointment.  Doc. 58 at 4–5.  So, the court construes their Amended Complaint and Response to allege FACE Act violations against Mr. Meyers and Mr. Jadlow for directing "threats of force" to plaintiffs.  But, the court, even construing the filings generously under the pro se standard, finds nothing in either of plaintiffs' two filings to allege that any of the other 52 defendants made similar threats of force.  Thus, plaintiffs haven't stated a claim against the other defendants for making a "threat of force" violating the FACE Act.

### c.  Physical Obstruction

The FACE Act defines "physical obstruction" to mean "rendering impassable ingress to or egress from a facility that provides reproductive health services . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous."  18 U.S.C. § 248(e)(4).  Here,

plaintiffs allege that defendants Trey Jadlow and Clifton Boje engaged in "physical obstruction" by "interpos[ing] their bodies in between [plaintiffs'] vehicle and [plaintiffs'] open, safe, ingress / egress into and from the clinic[.]"  Doc. 58 at 8.  The plaintiffs' Response to the Show Cause Order alleges that Mr. Jadlow "rushed up" to plaintiff's car as it was pulling into the parking lot of the clinic which caused plaintiffs "to come to a stop."  *Id.* at 4.  It also alleges that Mr. Jadlow stood in "close and vexatious proximity" to the car which caused plaintiffs to drive away from Mr. Jadlow and to the other side of the parking lot.  *Id.*  Also, the Response alleges that Mr. Boje "rushed up to interpose himself in an obstructing manner" between plaintiffs' car and the open exit as they were trying to leave the parking lot.  *Id.* at 10.  Plaintiffs allege that Mr. Jadlow and Mr. Boje's actions "interfered" with their ability to access the Planned Parenthood clinic where they were seeking reproductive health services.  *Id.* at 8.

Taking plaintiffs' allegations as true and construing them liberally, plaintiffs have alleged facts which, if proved, could support a plausible finding or inference that Mr. Jadlow and Mr. Boje "render[ed] impassable" plaintiffs' ingress and egress to the Planned Parenthood clinic or rendered their passage "unreasonably difficult or hazardous."  18 U.S.C. § 248(e)(4).  Plaintiffs allege that both Mr. Jadlow and Mr. Boje stood between their car and their ingress and egress from the facility.  These allegations can support a plausible FACE Act claim.  *See N.Y. ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 & n.18 (S.D.N.Y. 2006) (explaining that acts "of physical obstruction that are sufficient to create liability under FACE include obstructing *or slowing* access to driveways or parking lots . . . blocking patients inside automobiles by standing close to car doors . . . and participating in a demonstration so close to a clinic entrance that patients are compelled to use an alternate entrance," and noting that "the obstruction need not be permanent or entirely successful" and "[t]hat patients may eventually have reached the Center in

spite of defendants' actions is . . . beside the point" (emphasis added & citations omitted)).  Thus, plaintiffs have stated a plausible claim under 18 U.S.C. § 248 against Mr. Jadlow and Mr. Boje.

In contrast, plaintiffs allege no facts supporting a plausible finding or inference that any of the other 52 defendants engaged in a "physical obstruction" sufficient to support a FACE Act violation.  Thus, plaintiffs have stated a FACE Act claim for "physical obstruction" against only two defendants—Trey Jadlow and Clifton Boje.

### d.  Conclusion

At this stage of the case, the court must construe plaintiffs' factual allegations broadly and view them in plaintiffs' favor.  Also, the court must assume that those factual allegations are true.  Giving plaintiffs the benefit of those procedural advantages—as the court must, for now—the court concludes plaintiffs have stated a plausible claim for FACE Act violations against defendants Kevan Meyers, Trey Jadlow, and Clifton Boje.  So, plaintiffs may proceed on their FACE Act claims against those three.  Whether plaintiffs can muster admissible evidence to support their allegations is a separate question, one that the court does not address today.  In contrast, however, plaintiffs utterly have failed to allege any facts to present a plausible claim against the other 49 defendants.  Plaintiffs haven't pleaded facts capable of supporting a finding or inference that any of those 49 defendants engaged in a use of force, made a threat of force, or physically obstructed plaintiffs to "intimidate[ ] or interfere[ ] with" plaintiffs because they were "obtaining . . . reproductive health services."  18 U.S.C. § 248(a)(1).  The court thus dismisses those 49 defendants, *i.e.*, all but Messrs. Meyers, Jadlow, and Boje, from this action without prejudice.[7]

---

[7]      The court dismisses the claims without prejudice because "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice[.]"  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citations omitted).

### C.  Pending Motions

The court now addresses a number of other motions that currently are pending in the case—filed both by plaintiffs and some defendants.

### 1.  Plaintiffs' Motion for Class Certification

The same day plaintiffs filed their original Complaint they filed a "Motion to Certify Class."  Doc. 4.  The motion asks the court to certify a class under Fed. R. Civ. P. 23(c)(1)(B). *Id.* at 1.  Then, it merely lists the causes of action that plaintiffs assert against defendants—most of which the court now has dismissed because they fail to state a claim.  *Id.* at 1–2.  And finally, the motion asks to appoint Jonathan Pennington as class counsel under Fed. R. Civ. P. 23(g)(2). *Id.* at 2.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  The court has considerable discretion when deciding whether to certify a class action.  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) (because class certification "involves intensely practical considerations," decision rests within trial court's discretion (citation and internal quotation marks omitted)).  But when exercising this discretion, district courts must conduct a "rigorous analysis" and decide whether the putative class satisfies the requirements of Federal Rule of Civil Procedure 23.  *Comcast*, 569 U.S. at 33 (citation and internal quotation marks omitted); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

Here, there's not much "rigorous analysis" to conduct because plaintiffs provide so little to analyze.  Their class certification motion offers nothing but conclusory assertions.  They cite Fed. R. Civ. P. 23(c)(1)(B).  That subsection requires that an "order that certifies a class action

must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." *Id.* But, before the court can issue an order certifying a class, it must find that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class" and that one of the requirements established by Rule 23(b)(1), (b)(2), or (b)(3) is satisfied. *See* Fed. R. Civ. P. 23(a)–(b). Plaintiffs' motion doesn't provide any information for the court to conclude that their claims (or any one of them) satisfy Rule 23(a) and (b)'s requirements. Instead, it merely asks the court to certify a class and then lists the claims plaintiffs asserted in their original Complaint.

As the Supreme Court has said, plaintiffs, as the party requesting class certification, bear the burden of "'affirmatively demonstrat[ing]'" compliance with the rule's requirements. *Comcast*, 569 U.S. at 33 (quoting *Dukes*, 564 U.S. at 350). Plaintiffs "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. Plaintiffs haven't shouldered that burden here with their class certification motion. So, the court denies plaintiffs' "Motion to Certify Class." Doc. 4.

### 2. Plaintiffs' Motion for Preliminary Injunction and Related Motions

Plaintiffs also filed a Motion for Preliminary Injunction. Doc. 9. It seeks both a "preliminary injunction" and "restraining order" "barring Kevan Meyers and each individual Co-Conspirator from being present within 1,000 feet of any facility providing legal abortion services" and "from being present within l ,000 feet of Jonathan Pennington, Brooke Pennington, or the residence thereof." Doc. 9 at 1–2.

A party moving for a preliminary injunction "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *see also Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 907 (D. Kan. 1995) (explaining that when "addressing a motion seeking a temporary restraining order," the court "follows the same procedure as for a preliminary injunction motion"). Preliminary relief— whether in the form of a TRO or a preliminary injunction—"is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (preliminary injunction case); *see also Heavy Petroleum Partners, LLC v. Atkins*, No. 6:09-cv-01077-EFM-KMH, 2010 WL 11565423, at *2 (D. Kan. May 25, 2010) ("A temporary restraining order is an extraordinary remedy that is an exception rather than the rule, and courts do not grant it as a matter of right."). The decision whether to issue "a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court." *Sac & Fox Nation*, 905 F. Supp. at 906.

Plaintiffs' motion addresses none of the requirements for securing a preliminary injunction. It never explains why (1) plaintiffs are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," or (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. Importantly, plaintiffs' filings only describe their one visit to the Planned Parenthood clinic. Plaintiffs never allege in any filings that defendants are preventing them from returning to the Planned Parenthood clinic such that they are likely to establish irreparable harm absent an injunction. Also, they don't allege that any defendant has made any contact with plaintiffs since

the December 18 incident at the clinic—other than instances when plaintiffs have initiated contact by attempting to serve defendants with this lawsuit. Thus, plaintiffs haven't shown that they will suffer irreparable harm absent an injunction barring defendants from "being present within 1,000 feet" of plaintiffs or their residence. Doc. 9 at 1–2. Because plaintiffs have failed to establish any of the four elements required to secure a preliminary injunction, the court denies their motion.

Plaintiffs also filed a "Motion for Hearing" asking the court to hold a hearing on their Motion for Preliminary Injunction. Doc. 10. Because plaintiffs have failed to allege any of the required elements to secure a preliminary injunction, the court finds that it need not convene a hearing on the motion. *See Spadone v. McHugh*, 842 F. Supp. 2d 295, 298 n.2 (D.D.C. 2012) ("A court may deny a plaintiff's application for a preliminary injunction without first providing a hearing on the merits when the record demonstrates a lack of right to relief." (citation omitted)). Convening a hearing on a motion so inadequately supported would violate the first rule of the Federal Rules of Civil Procedure. That is, it would contradict the specified goal of the rule, securing the "just, speedy, and inexpensive determination" of the issues in this lawsuit. Fed. R. Civ. P. 1. The court thus denies plaintiffs' "Motion for Hearing." Doc. 10.

Also, plaintiffs filed a document titled "Motion: Proposed Order re Access to Court" (Doc. 21) and another document titled "Motion re Access to Court" (Doc. 32). Both filings seek "permission to possess and bring into this court a cellphone, tablet, laptop, or any other common clerical technology which is otherwise permitted to be used by licensed attorneys." Doc. 21 at 2; Doc. 32 at 1. The court denies the motions as moot. The court construes the requests as ones arising from plaintiffs' motion asking for hearing on the Motion for Preliminary Injunction. The

court has denied that request, and the case has no in-person hearings scheduled currently.  So, the court denies the requests to bring certain technology into the courthouse.

### 3.  Defendants' Motions to Dismiss and Related Motions

Next, the court addresses the pending Motions to Dismiss filed by some of the defendants.

Defendants Shawn Winslow, Sara Holder, and Eugene Fry filed Motions to Dismiss. Docs. 37, 38, 42.  Defendants David Daubenmire and Pass the Salt Ministries filed a Motion for Judgment on the Pleadings.  Doc. 43.  And, plaintiffs filed a Motion to Strike the Motion for Judgment on the Pleadings.  Doc. 48.  The court already has concluded that plaintiffs' Amended Complaint and Response fail to state plausible claims against any of these defendants.  And, this Order dismisses these defendants from the case.  So, the court denies as moot these defendants' pending Motions to Dismiss and Motion for Judgment on the Pleadings.  Docs. 37, 38, 42, 43. Also, it denies as moot plaintiffs' Motion to Strike.  Doc. 48.

Defendant Kevan Meyers also filed a Motion to Dismiss.  Doc. 26.  It is a one-page document and it asks the court to dismiss plaintiffs' case because:

1. The Plaintiffs failed to serve process in accordance with the Federal Rules of Civil Procedure [Rules 4.1 and Rule 4.2],
2. The Plaintiffs failed to provide the grounds for the Court's jurisdiction [Rule 8],
3. The Plaintiffs failed to show they are entitled to relief [Rule 8],
4. The pleading is being presented for the improper purpose of harassing the Defendant [Rule 11],
5. The claims are not warranted by existing law and are frivolous in nature [Rule 11), and
6. There is no evidentiary support for the factual assertions made [Rule 11].

*Id.* at 1.  The court declines to dismiss the FACE Act claims asserted against Mr. Meyers for any of these reasons.

*First*, Mr. Meyers's motion doesn't explain how plaintiffs failed to serve him with process consistent with the Federal Rules of Civil Procedure.  A plaintiff may serve a defendant using the processes specified by Rule 4 or by those processes recognized under Kansas law.  *See Davenport v. Wal-Mart Stores, Inc.*, No. 14-CV-2124-JAR-JPO, 2014 WL 3361729, at *2 (D. Kan. July 9, 2014).  Both Rule 4 and Kansas law permit a plaintiff to serve a defendant by "delivering a copy of the summons and of the complaint to the individual personally[.]"  Fed. R. Civ. P. 4(e)(2)(A); *see also* Kan. Stat. Ann. § 60-303(d)(A) (permitting service of process on an "individual" "by delivering or offering to deliver a copy of the process and petition or other document to the person to be served").  The docket reflects that plaintiffs personally served Mr. Meyers with the summons and Complaint on December 26, 2021.  Doc. 13, 27, 28.  Thus, according to the current content of the case's docket, plaintiffs properly have served Mr. Meyers.

*Second*, plaintiffs properly have invoked the court's subject matter jurisdiction.  Plaintiffs assert claims under the FACE Act—a federal law—so, the court has subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claims "aris[e] under the . . . laws . . . of the United States."  28 U.S.C. § 1331.  Also, plaintiffs assert that Mr. Meyers committed the alleged FACE Act violations at a Planned Parenthood Clinic in Overland Park, Kansas.  So, the court has personal jurisdiction over Mr. Meyers.  *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (explaining that Rule 4(k)(1)(A) applies when a federal statute does not provide for nationwide service of process and requires the court to apply the law of forum state where the district court is situated); *see also* Kan. Stat. Ann. § 60-308(b)(1)(B) & (b)(1)(L) (providing that, under the Kansas long-arm statute, a party submits to personal jurisdiction in Kansas by "committing a tortious act" in the state or "having contact with this

state which would support jurisdiction consistent with the constitutions of the United States and of this state").

*Third*, plaintiffs have stated a plausible claim against Mr. Meyers under the FACE Act. So, the court rejects Mr. Meyers's argument that plaintiffs have "failed to show they are entitled to relief." Doc. 26 at 1.

*Fourth*, Mr. Meyers provides no factual or other support for his arguments that plaintiffs' filings violate Fed. R. Civ. P. 11. Without any facts showing that plaintiffs have filed this lawsuit for the purpose of harassing Mr. Meyers, the court won't find a violation of Fed. R. Civ. P. 11.

For all these reasons, the court denies Mr. Meyers's Motion to Dismiss. Doc. 26. As already explained, plaintiffs have stated a valid FACE Act claim against Mr. Meyers. The court allows them to proceed on this claim.

### 4. Plaintiffs' Applications for Default

Last, the court addresses several Applications for "Default Judgment" that plaintiffs have filed. Plaintiff asks the court to enter default judgment against: defendants Kevan Meyers and Grace Christian Bible Fellowship Church (Doc. 29); Shawn Winslow (Doc. 44); 18 of the defendants, including Trey Jadlow (Doc. 49); 17 of the defendants, including Clifton Boje (Doc. 51); Scott Roeder, Richard Schilling, and Carol Schilling (Doc. 53); and 11 of the defendants (Doc. 62).

As already discussed, plaintiffs fail to state plausible claims against most of these defendants. So, the court denies as moot the Applications for "Default Judgment" against each defendant except Kevan Meyers, Trey Jadlow, and Clifton Boje.

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment.  First, Rule 55(a) allows the Clerk to enter default against a party who "has failed to plead or otherwise defend" a lawsuit.  Second, after the Clerk enters default, plaintiff may request the Clerk to enter judgment in an amount that is "a sum certain or a sum that can be made certain by computation[.]"  Fed. R. Civ. P. 55(b)(1).  Because plaintiffs haven't yet moved for entry of default under Rule 55(a), the court construes their Applications for "Default Judgment" as applications seeking an entry of default under Rule 55(a).

Kevan Meyers is not in default.  The docket reflects that he filed a Motion to Dismiss within 21 days after plaintiffs served him with process.  Doc. 26.  So, Mr. Meyers hasn't "failed to plead or otherwise defend" this lawsuit.  Fed. R. Civ. P. 55(a).  And, plaintiffs aren't entitled to entry of default against Mr. Meyers.

Also, the record doesn't show that either Trey Jadlow or Clifton Boje is in default.  Plaintiffs assert that they served Mr. Jadlow and Mr. Boje by certified mail on January 5, 2022.  Doc. 28 at 4.  Kansas law authorizes a plaintiff to serve process by return receipt delivery.  Kan. Stat. Ann. § 60-303(c).  Service by return receipt delivery "is effected by certified mail . . . to the party addressed, in each instance evidenced by a written or electronic receipt showing to whom [service was] delivered, the date of the delivery, the address where delivered[,] and the person or entity effecting delivery" and the return of service "must include a copy of the return receipt evidencing delivery."  *Id.* § 60-303(c)(1) & (4).  Plaintiffs haven't filed any written or electronic receipt showing that they effected service by certified mail either on Mr. Jadlow or Mr. Boje.  Thus, plaintiffs' request for default is either premature or baseless, so the court must deny it.  *See Loring v. Kwal-Howels, Inc.*, No. 12-2378-JAR, 2013 WL 3357674, at *2 (D. Kan. July 3, 2013)

(denying motion for default judgment as "premature" because "the record in th[e] case [did] not contain . . . evidence" of a copy of the return receipt).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Complaint is dismissed in part under 28 U.S.C. § 1915(e)(2)(B)(ii), for failing to state a claim for relief.  The court permits plaintiffs to proceed only on their FACE Act claims asserted against defendants Kevan Meyers, Trey Jadlow, and Clifton Boje.  But, it dismisses all other claims and defendants from this action.

**IT IS FURTHER ORDERED THAT** plaintiffs' "Motion to Certify Class" (Doc. 4) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Preliminary Injunction (Doc. 9) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' "Motion for Hearing" (Doc. 10) and Motions for Order (Docs. 21 & 32) are denied.

**IT IS FURTHER ORDERED THAT** defendant Kevan Meyers's Motion to Dismiss (Doc. 26) is denied.

**IT IS FURTHER ORDERED THAT** defendants Shawn Winslow, Sara Holder, and Eugene Fry's Motions to Dismiss (Docs. 37, 38, 42) are denied as moot.

**IT IS FURTHER ORDERED THAT** defendants David Daubenmire and Pass the Salt Ministries' Motion for Judgment on the Pleadings (Doc. 43) is denied as moot.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to Strike (Doc. 48) is denied as moot.

**IT IS FURTHER ORDERED THAT** plaintiffs' Applications for "Default Judgment" (Docs. 29, 44, 49, 51, 53, 62) are denied.

**IT IS SO ORDERED.**

**Dated this 4th day of March, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**